**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

COMMUNITY ACTION AGENCY OF
SIOUXLAND,

        Plaintiff,

vs.

BELLE OF SIOUX CITY, L.P. and
IOWA GAMING COMPANY, LLC,

        Defendants.

No. 16-CV-4141-LRR

**ORDER**

*TABLE OF CONTENTS*

*I.   INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*
*II.  RELEVANT PROCEDURAL HISTORY.* . . . . . . . . . . . . . . . . . . . . . . . *2*
*III. SUBJECT MATTER JURISDICTION.* . . . . . . . . . . . . . . . . . . . . . . *2*
*IV.  RELEVANT FACTUAL BACKGROUND..* . . . . . . . . . . . . . . . . . . . . . . *3*
    *A.   Parties..* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
    *B.   Overview of the Dispute.* . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
*V.   ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
    *A.   Standard of Review.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
    *B.   Unjust Enrichment Claim.* . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
        *1.   Enriched by a benefit.* . . . . . . . . . . . . . . . . . . . . . . . *8*
        *2.   Community Actions's expense.* . . . . . . . . . . . . . . . . . . . . *10*
*VI.  CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

*I. INTRODUCTION*

The matter before the court is Defendants Belle of Sioux City ("Belle") and Iowa Gaming Company's ("Iowa Gaming") (collectively, "Defendants") "Motion to Dismiss" ("Motion") (docket no. 10).

## II. RELEVANT PROCEDURAL HISTORY

On November 30, 2016, Plaintiff Community Action Agency of Siouxland ("Community Action") filed a Petition (docket no. 3) in the Iowa District Court for Woodbury County. On December 27, 2016, the matter was removed, bringing the case before the court. *See* Notice of Removal (docket no. 1). On January 25, 2017, Defendants filed the Motion. On February 15, 2017, Community Action filed a Resistance to the Motion ("Resistance") (docket no. 13). On March 3, 2017, Defendants filed a Reply ("Reply") (docket no. 16). Defendants request oral argument, but the court finds that oral argument is unnecessary. The matter is fully submitted and ready for decision.

## III. SUBJECT MATTER JURISDICTION

Community Action is an Iowa non-profit corporation organized and existing under the laws of the State of Iowa with its principal place of business in Woodbury County, Iowa. Petition ¶ 1. A corporation is "deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Therefore, Community Action is a citizen of Iowa.

Iowa Gaming is a limited liability company. Notice of Removal ¶ 13. "An LLC's citizenship, for purposes of diversity jurisdiction, is the citizenship of each of its members." *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). Iowa Gaming's "sole member is CRC Holdings, Inc.," which "is a Florida corporation with its principal place of business in Pennsylvania." Notice of Removal ¶¶ 12-13. Therefore, Iowa Gaming is a citizen of Florida and Pennsylvania.

Belle is a limited partnership with two partners: CRC Holdings, Inc. and Iowa Gaming. *Id.* ¶ 14. "In determining diversity of citizenship, the citizenship of each limited partner must be considered." *Weltman v. Silna*, 879 F.2d 425, 427 (8th Cir. 1989). Because Belle's citizenship is based upon the citizenship of its two partners, it is a citizen of Florida and Pennsylvania.

Accordingly, the court has diversity jurisdiction over the claims because complete diversity exists between the parties and the amount in controversy exceeds $75,000. *See* Notice of Removal ¶¶ 8-10, 15; *see also* 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil action where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States . . . .").

## IV. RELEVANT FACTUAL BACKGROUND

Accepting all factual allegations in the Petition as true and drawing all reasonable inferences in favor of Community Action, the relevant facts are as follows:

### A. Parties

Community Action is an Iowa non-profit corporation organized and existing under the laws of the Sate of Iowa with its principal place of business in Woodbury County, Iowa. Petition ¶ 1. Belle is a limited partnership and is a citizen of Pennsylvania and Florida. Notice of Removal ¶ 9. Iowa Gaming is a limited liability corporation and is a citizen of Pennsylvania and Florida. *Id*. ¶ 10. Defendants are partners that at all times material hereto were doing business as Argosy Casino Sioux City. Petition ¶ 2-3.

### B. Overview of the Dispute

The "Missouri River Historical Development, Inc." ("MRHD"), an Iowa non-profit corporation, is licensed by the "Iowa Racing and Gaming Commission" ("IRGC") to conduct gaming in Woodbury County. *Id*. ¶ 4; *see also* Iowa Code § 99F.5(1) ("A qualified sponsoring organization may apply to the commission for a license to conduct gambling games on an excursion gambling boat or gambling structure as provided in this chapter."). At all times material hereto, Belle "was the owner and operator of the Argosy Casino Sioux City." Petition ¶ 2; *see also* Iowa Code § 99F.4(2) (granting the IRGC power "to license the operators of excursion gambling boats"). MRHD acted as the qualified sponsoring organization ("QSO") in an operating agreement with Belle permitting Belle's operation of the Argosy Casino Sioux City. Petition ¶ 4.

3

A QSO is a "nonprofit corporation organized under the laws of [Iowa]." Iowa Code § 99F.1(21). "A [QSO] may apply to the [IRGC] for a license to conduct gambling games . . . ." Iowa Code § 99F.5(1). "Once licensed, the QSO may operate the gambling games itself or it may contract with another person or entity to operate the games." *Belle of Sioux City, L.P. v. Iowa Racing & Gaming Comm'n*, 883 N.W.2d 536, 2016 WL 1129935, at *1 (Iowa Ct. App. 2016) (unpublished table decision) (citing Iowa Admin. Code r. 491-1.5(1)). Thus, the Iowa Code permits two different scenarios: (1) a QSO both conducts and operates gambling and (2) a QSO is licensed to conduct gambling and, pursuant to an operating agreement, partners with an operator. *See* Iowa Code § 99F.1(2) (differentiating between a "person . . . applying for a license to operate an excursion gambling boat" and "the officers and members of the board of directors of a [QSO] . . . applying for a license to conduct gambling games").

Under the first scenario, that is, where a QSO is "licensed to operate gambling games . . . [it] [must] distribute the receipts of all gambling games, less reasonable expenses . . . as winnings to players . . . or shall distribute the receipts for educational, civic, public, charitable, patriotic, or religious uses." Iowa Code § 99F.6(4)(a)(2). Under the second scenario, that is, where a QSO contracts with another person or entity to operate the games, the operating agreement "[must] provide for a minimum distribution by the [QSO] for educational, civil, public, charitable, patriotic or religious uses . . . that averages at least [3%] of the adjusted gross receipts for each license year." Iowa Code § 99F.5(1); *see also* Iowa Code § 99F.6(4)(a)(2) ("[A] licensee to conduct gambling games . . . shall, unless an operating agreement . . . otherwise provides, distribute at least [3%] of the adjusted gross receipts for each license year for education, civic, public, charitable, patriotic, or religious uses . . . ."). "The operating agreement must be approved by the IRGC, and the operator must also be licensed by the IRGC." *Belle of Sioux City*, 2016 WL 1129935, at *1 (internal citation omitted) (citing Iowa Code §§ 99F.7(3), 99F.5(1)).

The operating agreement between Belle and MRHD expired on July 6, 2012. Petition ¶ 4. Despite the expiration of the agreement, Belle continued to operate the Argosy Casino Sioux City until July 30, 2014. *Id.* ¶ 5. Because of the expiration of the operating agreement, Belle did not have a license to operate the casino from July 6, 2012 through July 30, 2014. *See id.* ¶ 4; *see also Belle of Sioux City*, 2016 WL 1129935, at *8. At all times "[p]rior to April 1, 2013," MRHD received monthly distributions from Belle representing [3%] . . . of Belle's adjusted gross receipts" pursuant to Iowa Code §§ 99F.5(1) and 99F.6(4)(a)(2). Petition ¶ 6. Belle continued to make payments for eight months in the absence of an operating agreement. *Compare id.* ¶ 4, *with id.* ¶ 6. After April 1, 2013, Belle stopped making distributions. From April 1, 2013 until the Argosy Casino Sioux City ceased operation on July 30, 2014, Belle made over $64 million in gross receipts. *Id.* ¶ 15. Three percent of these receipts amounts to approximately $1.9 million. *Id.*

Community Action filed the instant action alleging that Defendants were unjustly enriched because they failed to remit 3% of their gross receipts to MRHD, which would in turn distribute such receipts to educational, civic, public, charitable, patriotic or religious uses during the time period at issue.

## V. ANALYSIS

### A. Standard of Review

The Federal Rules of Civil Procedure provide for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When analyzing a Rule 12(b)(6) motion, the court must accept all of the factual allegations in the complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss under Rule 12(b)(6) "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Varga v. U.S. Bank Nat. Ass'n*, 764 F.3d 833, 838-39 (8th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). This standard requires a complaint to "contain factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).

Although a plaintiff need not provide "detailed" facts in support of his or her allegations, the "short and plain statement" requirement of Federal Rule of Civil Procedure 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary [under Rule 8(a)(2)]."). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Where the allegations show on the face of the complaint [that] there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)).

### B. Unjust Enrichment Claim

Defendants argue that Community Action has failed to state a claim for unjust enrichment because it "does not allege that Belle received a benefit" by retaining the 3% of its gross receipts to which Community Action asserts Defendants were not entitled. Brief in Support of Motion (docket no. 10-1) at 5. Specifically, Defendants contend that Community Action "identifies no legally plausible basis through which Belle was obligated . . . to 'remit monthly 3% payments to charity.'" *Id*. (quoting Petition ¶ 20). Defendants argue that Iowa Code § 99F.5(1) is inapplicable because "Belle did not have an operating agreement during the period at issue" and "[Iowa Code] § 99F.6(4)(a)(2) is not applicable

. . . because it applies only to a QSO." *Id*. Defendants also claim that "there is no plausible basis by which . . . [Community Action] can show that [Defendants were] enriched '. . . [Community Action]'s expense.'" *Id*. at 6.

Community Action asserts that for two years Belle operated "the Argosy Casino without an operating agreement or valid license" and for sixteen of those months "Belle failed to remit any of the 3% payments to charity." Brief in Support of Resistance (docket no. 13-1) at 5. According to Community Action, retention of 3% of its gross receipts "is an advantage no other Iowa casino enjoys." *Id*. Additionally, Community Action contends that "it is irrelevant whether [it] has a statutory or contractual right to any payments" because it "seeks recovery in equity." *Id*. at 6.

"Unjust enrichment is an equitable principle mandating that one shall not be permitted to unjustly enrich oneself at the expense of another or to receive property or benefits without making compensation for them." *W. Branch State Bank v. Gates*, 477 N.W.2d 848, 851-52 (Iowa 1991) (citing *Johnson v. Dodgen*, 451 N.W.2d 168, 175 (Iowa 1990)). "To recover on a theory of unjust enrichment under Iowa law, a plaintiff must plead and prove three elements: '(1) defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances.'" *Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 543-44 (S.D. Iowa 2007) (quoting *Dep't of Human Servs. ex rel Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154-55 (Iowa 2001)). "The requirements of proof are neither technical nor complicated. '[I]t is essential merely to prove that a defendant has received money which in equity and good conscience belongs to plaintiff.'" *Iconco v. Jensen Const. Co.*, 622 F.2d 1291, 1295 (8th Cir. 1980) (quoting *In re Estate of Stratman*, 1 N.W.2d 636, 642 (Iowa 1942)). Unjust enrichment may "serve as independent grounds for restitution in the absence of mistake, wrongdoing, or breach of contract." *Lakeside Feeders, Inc. v. Producers Livestock Mktg. Ass'n*, 827 F. Supp. 2d 893, 910 (S.D. Iowa

2011).

### 1. *Enriched by a benefit*

Although a plaintiff must plead that "defendant was enriched by the receipt of a benefit," this does not "require the benefit[] to be conferred directly by the plaintiff." *Unisys Corp.*, 637 N.W.2d at 154-55; *see also Iconco*, 622 F.2d at 1302 (finding "no requirement . . . that the plaintiff itself must have conferred the benefit sought to be recovered from the defendant"). "[B]enefits can be direct or indirect, and can involve benefits conferred by third parties." *Unisys Corp.*, 637 N.W.2d at 155.

Defendants emphasize that both parties agree Belle had neither a valid operating agreement nor a valid license during the time it failed to make charitable disbursements. Brief in Support of Motion at 5; Brief in Support of Resistance at 5; Reply at 3 n.3. Iowa law merely requires that the defendant received money that in equity belongs to the plaintiff. *Iconco*, 622 F.2d at 1302; *see also Okoboji Camp Owners Coop. v. Carlson*, 578 N.W.2d 652, 654 (Iowa 1998) (finding benefit was conferred where "[t]here [was] no express agreement between the parties"). "The underlying policy . . . for unjust enrichment is, regardless of the legal position of the parties, a situation has arisen making it inequitable or unjust not to order restitution." *Iowa Waste Sys., Inc. v. Buchanan Cty.*, 617 N.W.2d 23, 31 (Iowa Ct. App. 2000). Because unjust enrichment is an equitable principle, Defendants' focus on lack of a legal obligation to distribute 3% of Belle's receipts and, thus, absence of any alleged benefit, is unpersuasive.

However, Defendants correctly assert that "unjust enrichment does not exist in a vacuum." Reply Brief at 5; *see also Iconco*, 622 F.2d at 1296 ("Unjust enrichment does not occur in the abstract."). "One is unjustly enriched only by reference to some standard of justice and fairness." *Iconco*, 622 F.2d at 1296. Courts are "free to look to the provisions of a state statute defining legal rights and responsibilities to discern whether one's enrichment at the expense of another had been unjust." *Id.*; *see also id.* at 1299

8

(concluding that Iowa could "use the Small Business Act as a standard in determining whether [the defendant] ha[d] . . . been unjustly enriched at the expense of [the plaintiff]" but recognizing that the act itself did not provide for a private right of action by an unsuccessful bidder).

Iowa Code Chapter 99F delineates the legal rights and responsibilities of licensed gaming conductors and gaming operators. If a QSO partners with an operator, the QSO, must "distribute at least [3%] of the adjusted gross receipts . . . for educational, civic, public, charitable, patriotic, or religious uses." Iowa Code § 99F.6(4)(a)(2); *see also* Iowa Code § 99F.5(1). Iowa imposes the requirement to remit a minimum of 3% of the adjusted gross receipts on all casinos operating lawfully under Iowa Code Chapter 99F. *See* Iowa Code § 725.15 (excepting from criminal prosecution "a game, activity, ticket, or device . . . lawfully possessed, used, conducted, or participated in pursuant to [C]hapter . . . 99F"). Because a casino operator must either be, or be partnered with, a QSO   and Defendants admit that Belle was neither   Belle was operating unlawfully. *See* Brief in Support of Motion at 5 ("Belle did not have an operating agreement during the period at issue here. . . . [Iowa Code] § 99F.6(4)(a)(2) is not applicable . . . because it applies only to a QSO . . . not a casino manager like Belle.").

Community Action's theory of recovery is that Defendants cannot escape their financial obligations by operating outside the law. Had Belle been operating lawfully, as it and the IRGC believed, Belle would have been partnered with a QSO and the QSO would have been required to distribute 3% of Belle's gross receipts. *See* Brief in Support of Motion at 6 ("[Belle] believed in good faith that it had a valid operating agreement with MRHD and that MRHD would . . . ultimately be statutorily obligated to pay the 3% to charities."); *Belle of Sioux City*, 2016 WL 1129935, at *5 (describing the IRGC's determination that any "err[or] in allow[ing] gambling to continue at the Argosy Casino . . . was harmless" in part because "[3%] of the adjusted receipts continued to be

9

distributed for educational and charitable purposes"). By failing to comply with the Iowa Code, Belle enjoyed the retention of the 3% of its receipts to which it would normally not have been entitled as a casino operator. As a result, Community Action has pled sufficient facts to support a claim that Defendants' failure to remit 3% of its receipts conferred a benefit on Defendants. *Cf. Plymouth Cty., Iowa ex rel. Raymond v. MERSCORP, Inc.*, 886 F. Supp. 2d 1114, 1125-26 (N.D. Iowa 2012) (dismissing unjust enrichment claim based "on an alleged but nonexistent legal requirement," concluding that "because the legal proposition [was] wrong, there is no circumstance pleaded that makes it 'unjust to allow the defendant to retain the benefit under the circumstances'" (quoting *Lakeside Feeders, Inc. v. Producers Livestock Mktg. Ass'n*, 666 F.3d 1099, 1112 (8th Cir. 2012))).

### 2. *Community Action's expense*

A plaintiff must also plead that the enrichment was at its expense. *See Unisys Corp.*, 637 N.W.2d at 155. Because unjust enrichment is an equitable principle, it is unnecessary for Community Action to establish a binding legal right to the funds. Rather, it is merely necessary to prove the money belongs to the plaintiff in equity. *See Iconco*, 622 F.2d at 1302. As addressed above, courts are "free to look to the provisions of a state statute defining legal rights and responsibilities to discern whether one's enrichment at the expense of another had been unjust." *Id.* at 1296.

Defendants assert that Community Action "is no different than any other charity that has a desire for but no legally cognizable interest in receiving charitable funds." Brief in Support of Motion at 9. Defendants emphasize that, although MRHD enumerated Community Action as an "eligible recipient of the[] funds," such list is not legally binding. *Id.* at 7, 9; *see also* Petition ¶ 17 (pleading that Community Action was designated as an eligible charity by MRHD). Further, according to Defendants, Community Action did not "establish that MRHD had the binding authority to decide, in advance of any legal right to such charitable funds, which charities were eligible recipients of these funds." Brief in

10

Support of Motion at 7.

Three percent of the adjusted gross receipts must be distributed for "educational, civic, public, charitable, patriotic, or religious uses." Iowa Code § 99F.5(1). Iowa Code § 99B.1(14) defines "educational civic, public, charitable, patriotic, or religious uses" as:

> uses benefiting a society for the prevention of cruelty to animals or animal rescue league; uses benefiting an indefinite number of persons either by bringing them under the influence of education or religion or relieving them from disease, suffering, or constraint, or by erecting or maintaining public buildings or works, or otherwise lessening the burden of government; and uses benefiting any bona fide nationally chartered fraternal or military veterans' corporation or organization which operates in Iowa . . . .

Community Action alleges that it is a "non-profit organization[] which [is an] eligible recipient[] of the" undistributed funds. Petition ¶ 17. In Count II, Community Action seeks to bring the action "on behalf of all others similarly situated, to wit: All charitable entities who are entitled to receive payments." Petition ¶ 26. Insofar as Defendant does not dispute Community Action is a qualifying charitable entity, the court will assume for purposes of the Motion that Community Action so qualifies.

Under such assumption, Community Action would be an entity eligible to receive the undistributed funds. Although MRHD created the particular list of eligible recipients and Belle was no longer partnered with MRHD during the period in dispute, a casino is "statutorily required to partner with a QSO." *Belle of Sioux City*, 2016 WL 1129935, *4. MRHD was the only QSO licensed in Woodbury County. Petition ¶ 4. Additionally, at all times prior to April 1, 2013, Belle remited 3% of its adjusted gross receipts to MRHD. Petition ¶ 6. Belle admits that it "believed in good faith that it had a valid operating agreement with MRHD and that MRHD would . . . ultimately be statutorily obligated to pay the 3% to charities." Brief in Support of Motion at 6. Community Action's presence on MRHD's list sufficiently establishes it as a potential recipient of the funds to survive a motion to dismiss. *See Parkhurst*, 569 F.3d at 865 (requiring a complaint to "contain

11

factual allegations sufficient 'to raise a right to relief above the speculative level'" (quoting *Twombly*, 550 U.S. at 555)). Community Action's claim is more than merely speculative when asserted on behalf of all similarly situated charitable entities, one of which was entitled to receive the funds at issue.[1]

## VI. CONCLUSION

In light of the foregoing, the Motion to Dismiss (docket no. 10) is **DENIED**. All counts against Defendants remain and shall proceed to trial.

**IT IS SO ORDERED.**

**DATED** this 18th day of April, 2017.

_____
LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA

---

[1] The court notes that Community Action has not yet applied for class certification pursuant to Federal Rule of Civil Procedure 23. *See Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013) ("In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." (quoting *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994))). The court takes no position as to the potential merits of any future application for class certification.